IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MARIA PARISI, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:07-CV-711-Y |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

A.    STATEMENT OF THE CASE

Plaintiff Maria Parisi brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. Parisi alleges that she has been disabled since April 26, 2005, which is also the date that she filed her application for benefits. (Tr. 37, 326). She met the insured status requirements through December 2006. (Tr. 17).

After the Social Security Administration denied her application both initially and on reconsideration, Parisi requested a hearing before an administrative law judge (the "ALJ"). ALJ

William Helsper held a hearing on December 6, 2006 in Fort Worth, Texas. (Tr. 317). On February 22, 2007, the ALJ issued a decision that Parisi was not disabled because she retained the residual functional capacity (RFC) to perform her past relevant work as a computer programmer. (Tr. 17-24). The Appeals Council denied Parisi's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh evidence, try questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

    1.  Whether the residual functional capacity assessment incorporates all of Parisi's impairments; and

    2.  Whether substantial evidence supports the determination that Parisi can perform her previous work.

D. ADMINISTRATIVE RECORD

Parisi complains that she is disabled by gout, heel spurs, knee problems, sleep apnea, obesity, depression, and high blood pressure. (Tr. 92). She received medical treatment with Baily Health Care in Virginia before moving to Texas in November 2003. (Tr. 240). Medical reports from January 2003 reflect diagnoses of obesity, hypertension, and depression, and her physician restricted her to jobs that were performed while sitting, no heavy physical activity, no lifting more than ten pounds, and no frequent stooping or stair-climbing. (Tr. 260). Parisi was referred to a psychiatrist for evaluation because she had a history of treatment for depression, but the administrative record contains no information about any psychiatric treatment she may have received. (Tr. 262).

In May 2003, Parisi was diagnosed with gout and occasional right knee pain. (Tr. 251). She also complained of left heel spurs and requested an injection of hydrocortisone. Parisi was referred to a specialist in July 2003 for evaluation of her right knee. (Tr. 159). She complained of pain and weakness in her knee, and reported that she could feel the patella shift. The physician assessed chondromalacia[1] of the patella. (Tr. 160). Parisi was given exercises and was advised to avoid squatting and kneeling. The physician also told her that arthroscopic surgery might be beneficial if her symptoms persisted. (Tr. 160).

After moving to Texas, Parisi established a treating relationship with William Chambers, Jr., D.O. (Tr. 165). She complained of heel spurs and sleeping a lot. She reported mood swings and was depressed about her weight. (Tr. 163). Chambers diagnosed heel spurs and an unspecified mood

---

[1] Chondromalacia is an abnormal softening of articular cartilage. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 358 (31st ed. 2007).

disorder.

Parisi was referred for a mental status evaluation with Kim Johnson, Psy. D., on July 18, 2005. (Tr. 167). Parisi reported a history of depression and stated that her ability to function was getting worse. Some days she did not shower or dress. She was tired of trying to find a job because she was overqualified. Parisi said she had no energy and no desire to work anymore. She thought that moving to Texas was a mistake, and she admitted having suicidal ideations without a plan. She was worried about her finances and had trouble sleeping. Parisi had tried to obtain outpatient treatment, but was told that she did not meet the criteria. She had never been hospitalized for psychiatric reasons, but she had attended grief counseling and counseling for panic attacks in 1985 and 1986. (Tr. 167). Parisi had never married and had no children. She had been fired from her job as a computer programmer because her sleep apnea caused her to doze off at work. (Tr. 167-A).

Parisi was cooperative, but her mood was depressed with a sad affect. Her speech was goal-directed and logical, and she was oriented. Her immediate memory was slightly limited, her recent memory was within normal limits, and her remote memory was limited. Her concentration was limited as demonstrated by her ability to spell the word "world" forward and backward, perform serial 7s with two errors, and execute a three-step command correctly. Her intellectual functioning was assessed as average. (Tr. 167-A).

Parisi's daily activities included bathing, grooming, cooking, shopping, cleaning house, paying bills, managing her money, and driving. Although able to perform the above activities, she explained that she had little motivation to do so. (Tr. 167-A). Parisi had a friend who helped clean her house. Parisi reported occasional contact with friends on the internet. A typical day consisted

of playing games on the internet, chatting with friends on the internet, caring for her cats, and watching television. Parisi said her only goal was to get through each day. (Tr. 168). Johnson opined that Parisi was experiencing a major depressive episode superimposed on a dysthmic disorder, which was a chronic level of depression that did not interrupt functioning. Johnson also noted that Parisi had been deteriorating psychologically since moving to Texas, but she was open to counseling and her functioning might improve with treatment. Johnson advised that Parisi's ability to maintain employment was related to her treatment for sleep apnea so she could feel rested and focused during the day. (Tr. 168).

Parisi was referred to internist William Bosworth, M.D., for a consultative evaluation on July 26, 2005. She advised that she had occasional episodes of acute gout since 2003, but her recent episodes had been minor and she was taking medication that was beneficial. (Tr. 170). She has had problems with heel spurs since 1997 and did better when she stayed off of her feet. Her right knee was painful, but she could not recall a specific injury or trauma. Parisi had been obese for years. She had hypertension that was controlled by medication and had not resulted in any complications. She estimated that she could walk about one block and did not require a cane, crutch or walker. She did her own grocery shopping, meal preparation, and laundry, but no significant housework. She was able to stand for a few minutes and sit as required. (Tr. 171).

On examination, Parisi weighed 327 pounds. (Tr. 171). She was tender to gentle palpation across the lumbosacral area. Her gait and station were normal, but she performed heel, toe and tandem walking poorly. She was able to squat, and her fine and dextrous finger control was normal. Bosworth noted that deep tendon reflexes were absent in both knees, but peripheral sensation was

intact in all extremities. (Tr. 172). Bosworth's clinical impression included a history of gout, generally well controlled; history of heel spurs; right knee pain probably due to degenerative arthritis; morbid obesity, which was her primary medical problem; and hypertension that was generally well controlled. (Tr. 172).

Parisi was seen by physicians at the Campbell Health System in January 2006 for complaints of back pain. (Tr. 212). X-rays showed significant degenerative changes along her lumbar spine. (Tr. 220). She was given medication to relieve her symptoms and discharged in stable condition. (Tr. 212).

E.   ADMINISTRATIVE HEARING

Parisi testified that she was fifty-one years old and had a bachelor's degree. (Tr. 320). Her most recent full-time employment as a computer programmer ended in March 2001 because she had sleep apnea that caused her to doze during the day. Parisi spent most of the day searching the Internet or sitting in her recliner. She had someone assist her with the housework. (Tr. 321). She testified that she woke up frequently at night and usually slept in her recliner because it was easier for her breathe. She was on medication for gout and high blood pressure, and she used Aleve for her shoulder pain and back pain. (Tr. 322-23).

Parisi testified that she had been denied mental health services from the public clinic because she had too much money in her savings account. Her physician had prescribed medication to treat her depression, but the medication only made her condition worse. (Tr. 324). Depression interfered with her day because it made her sleep more and retreat into herself. (Tr. 325).

Parisi also testified that she had been obese since childhood. Her weight interfered with her ability to walk. She could walk about a block on a good day if her pace was slow. She estimated

that she could lift no more than ten pounds, but less on a bad day. (Tr. 327). Heel spurs limited her ability to stand to only a few minutes at a time. (Tr. 328). She was able to sit at her computer for about an hour before resting in her recliner for two or three hours. She took three or four naps a day. (Tr. 329). She testified that her sleep was not restful, but she was unable to afford the machine necessary to treat her sleep apnea. (Tr. 330). Parisi testified that her depression fluctuated. She had low energy and few friends, and the computer was her only hobby. She also complained of difficulty concentrating. and she thought that her emotional and physical problems were getting worse. (Tr. 331).

Vocational expert Carol Bennett testified that computer programming was skilled work requiring sedentary exertion. Computer consulting was also skilled work that was sedentary, but could require light exertion if it involved traveling. (Tr. 333). Bennett testified that a person who needed unscheduled naps throughout the day would be unable to hold any competitive employment. (Tr. 334).

E.   ALJ DETERMINATION

The ALJ found that Parisi had not engaged in substantial gainful activity since April 26, 2005, and had the following severe impairments: obesity, depression, and spinal arthritis. (Tr. 19). None of her impairments met or medically equaled any listed impairment. The ALJ further found that Parisi had the residual functional capacity to perform sedentary work, which was described as work generally performed while seated with no lifting in excess of ten pounds. He found Parisi could occasionally climb ramps or stairs and occasionally crouch or crawl. (Tr. 20). The ALJ found that Parisi's residual functional capacity was compatible with her past relevant work as a computer

programmer. Accordingly, the ALL found that Parisi was not disabled and was not eligible for disability insurance benefits. (Tr. 24).

F.  DISCUSSION

    1.  Residual Functional Capacity

Parisi asserts that substantial evidence does not support the ALJ's assessment of her residual functional capacity (RFC) because the ALJ failed to incorporate limitations associated with her mental impairment. She further contends that the ALJ violated several legal standards in making this assessment. Parisi notes that the ALJ determined that depression was one of her severe impairments, but in making this determination, erred in three respects: (1) he failed to cite the correct standard for determining the severity of the mental impairment; (2) he failed to apply the proper technique for assessing the mental impairment; and, (3) he failed to consider the state agency medical consultants' opinions.

In his decision, the ALJ observed that an impairment is severe "if it significantly limits an individual's ability to perform basic work-related activities," but it is not severe "when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. 18). Parisi argues that the ALJ did not set out the appropriate standard for severity recognized in the Fifth Circuit.

In *Stone v. Heckler*, the Fifth Circuit set the following standard in determining whether a claimant's impairment is severe: An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere

with the individual's ability to work, irrespective of age, education or work experience. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The courts are to presume the ALJ used an incorrect standard for measuring severity if the decision fails to refer to the *Stone* opinion by name or cite language of the same effect. *See Loza*, 219 F.3d at 393. The ALJ did not refer to *Stone*.

Even if the ALJ has committed legal error by not citing or quoting *Stone*, it would be a waste of administrative and judicial resources to remand the case because the ALJ's fact-finding at Step Two would remain unchanged. Parisi's situation is comparable to the facts presented in *Chaparro v. Bowen*, 815 F.2d 1008 (5th Cir. 1987). In *Chaparro*, the claimant argued that the ALJ presumptively applied the wrong standard because he had not cited the *Stone* decision. The Fifth Circuit rejected this argument for two reasons. The first ground was waiver because Chaparro had not presented his argument to the district court. *Id*. at 1011. The second ground was relevance because the case had not turned on a finding of severity, which the ALJ found, but on Chaparro's ability to return to his past relevant work. *Id*. Parisi's argument is similarly irrelevant to the disposition of her own disability application. The ALJ found that her obesity, arthritis and depression were severe, and regardless of the severity standard that was used, Parisi does not assert that he dismissed any of her impairments as non-severe.

Parisi also complains that the ALJ failed to follow the special administrative procedures used in evaluating mental impairments. *See generally* 20 C.F.R. § 404.1520a. The disability regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Once an impairment

is found, the administration rates the degree of functional limitation resulting from the impairment. *Id*. § 404.1520a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id*. § 404.1520a(c)(3). After rating the claimant's functional limitations, the administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id*. § 404.1520a(d). When the degree of mental limitation in the four given areas is none or mild, the mental impairment is generally not found to be severe unless the evidence otherwise indicates more than minimal limitation in the claimant's ability to perform basic work activities. *Id*. § 404.1520a(d)(1). If the impairment is considered severe, the administration determines if the impairment meets or is equivalent in severity to a listed impairment. *Id*. § 404.1520a(d)(2). If the claimant has a severe impairment that neither meets nor medically equals a listed impairment, the adjudicator proceeds to an assessment of the claimant's RFC. *Id*. § 404.1520a(d)(3).

At the initial and reconsideration levels, a standardized document referred to as a Psychiatric Review Technique Form (PRTF) is prepared to record how the technique has been applied. *Id*. §§ 404.1520a(e)(1), 416.920a(e)(1). At the ALJ and Appeals Council levels, the written decision itself incorporates the pertinent findings and conclusions based on the technique, including specific findings as to the degree of limitation in each of the functional areas. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). Although he found the existence of a severe mental impairment, the ALJ's decision does not reflect that he applied the technique or assessed Parisi's limitations in the four broad areas of functioning.

By not rating each of the functional areas and documenting his application of the technique, the ALJ erred, but procedural defects in the agency process are reversible error only when the substantial rights of a party have been affected. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). The technique is used to rate the severity of mental impairments at steps two and three in the sequential evaluation process. SOCIAL SECURITY RULING 96-8p. Despite his failure to include application of the technique in his decision, the ALJ found a severe mental impairment (step two) that did not meet or equal the criteria of a listed impairment (step three). Parisi does not challenge either finding as incorrect and fails to demonstrate that her substantial rights were affected.

After finding a severe mental impairment, the ALJ discussed the limitations attributable to Parisi's depression. The ALJ noted that the record did not reflect any psychiatric treatment for a mental disorder. Parisi was able to drive. She handled her own personal needs and finance; she maintained sufficient attention and concentration to use her computer; and she maintained relationships with friends. He further found that Parisi's use of her computer indicated that she maintained sufficient attention and concentration to perform the requirements of detailed and complex tasks within reasonable time frames. (Tr. 23).

Parisi asserts that the ALJ's assessment is unsupported by substantial evidence and conflicts with the findings of the state agency medical consultants. Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. § 404.1527(f); SOCIAL

SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

The state agency medical consultants who reviewed Parisi's case found that her depressive syndrome constituted a severe mental impairment, (Tr. 194, 208), and resulted in mild restriction in her activities of daily living, moderate restriction in social functioning, moderate impairment in her concentration, persistence or pace; and no episodes of decompensation. (Tr. 204). In assessing Parisi's mental RFC, they further opined that Parisi had moderate limitations in her ability to understand, remember and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or make plans independently. (Tr. 190-191). The state agency medical consultants concluded that Parisi retained the capacity for basic work-related mental activities, including understanding, remembering and carrying out simple instructions; making simple decision; concentrating for extended periods; interacting with others; and responding to change. (Tr. 192). *See* 20 C.F.R. § 404.1521(b)(3)-(6).

The ALJ considered the opinions offered by the state agency medical consultants and stated that he found more significant exertional limitations, but less significant mental limitations than those found at the state agency level. (Tr. 23-24). He stated that he was giving little weight to these

opinions. (Tr. 24). Although Parisi would have preferred that the ALJ detail the reasons and specify what information he was relying on that caused him to disagree with the state agency assessments, the ALJ's explanation is sufficient to satisfy his duty to consider the medical opinions from earlier stages of the disability determination process.

Parisi contends that her depression is severe and thus could be expected to produce work-related limitations, yet the RFC assessment includes no limitations attributable to her mental impression. RFC is what an individual can still do despite her limitations. SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SOCIAL SECURITY RULING 96-8p. RFC is not the least an individual can do, but the most. *Id.* The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered. *Id.* In assessing a claimant's mental abilities, the ALJ considers the nature and extent of the claimant's mental limitations and restrictions, then determines the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(c). The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but presumptions, speculation, and supposition do not constitute evidence. SOCIAL SECURITY RULING 86-8.

Parisi argues that the complexities of working as a computer programmer are an issue for someone with a severe mental impairment, and she reasserts her position that the ALJ should have adopted the opinions of the state agency medical consultants. A limited ability to carry out certain

mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce the claimant's ability to do past work and other work. 20 C.F.R. § 404.1545(c). The ALJ, however, considered Parisi's mental impairment and its impact on her daily activities, social functioning, and concentration, and found that she retained the ability to complete detailed and complex tasks within reasonable time frames. (Tr. 23). The ALJ also stated that he was affording little weight to the findings of the state agency medical consultants with respect to Parisi's mental RFC. The ALJ compared Parisi's mental abilities with the mental demands of her previous work and made a clear finding that Parisi was capable of meeting the physical and mental demands of her past relevant work as actually and generally performed. (Tr. 24, ¶ 6). *See* SOCIAL SECURITY RULINGS 82-62, 96-9p. *See also Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir.1994)(requiring that ALJ compare remaining functional capacities with physical and mental demands of previous work and make clear factual findings on this issue).

Whether the court would have reached a different determination on the same evidence is not the issue. The court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Moreover, procedural perfection in administrative proceedings is not required so long as substantial rights have not been affected. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Morris*, 864 F.2d at 335. Parisi has not demonstrated that the Commissioner's assessment of her RFC is unsupported by substantial evidence or that her substantial rights were affected by the errors noted in the Commissioner's

decision.

2.    Past Relevant Work

Parisi asserts that the substantial evidence does not support the Commissioner's determination that she can perform her past relevant work as a computer programmer. In assessing the demands of a claimant's previous occupation, the claimant is the primary source of vocational documentation, and the claimant's statements are generally sufficient to determine skill level, exertional demands, and nonexertional demands of a previous job. SOCIAL SECURITY RULING 82-62. For situations where available documentation and vocational resource materials are insufficient to determine how a particular job is usually performed, it may be necessary to obtain the services of a vocational expert. *See* 20 C.F.R. § 405.1560(b)(2); SOCIAL SECURITY RULING 82-61. The ALJ may not rely on generic classifications of previous jobs. *Id*. *See also Latham*, 36 F.3d at 484.

The Dictionary of Occupational Titles (DOT) lists a specific vocational preparation (SVP) time for each described occupation. The SVP level is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. *See* DICTIONARY OF OCCUPATIONAL TITLES app. C (rev. 4th ed. 1991). Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher. SOCIAL SECURITY RULING 00-4p. *See generally* 20 C.F.R. § 404.1568; DICTIONARY OF OCCUPATIONAL TITLES app. C (rev. 4th ed. 1991). The vocational expert testified that the computer programmer position is considered

sedentary, skilled work, with a specific vocational preparation level of 8.[2] (Tr. 333).

The ALJ found that Parisi retained the ability to perform the physical and mental demands of her past relevant work as a computer programmer. (Tr. 24). Parisi complains that the ALJ did not ask the vocational expert any hypothetical questions to determine whether the mental limitations found by the state agency medical consultants would allow for the performance of her past relevant work. She notes that it is appropriate to use vocational experts to resolve issues even at step 4 of the sequential evaluation process. *See* SOCIAL SECURITY RULING 00-4p. As already discussed, the ALJ gave little weight to the opinions of the state agency medical consultants. And although it is permissible for the ALJ to use the services of a vocational expert at the fourth step of the sequential evaluation process, it is not mandatory. *See Green v. Schweiker*, 694 F.2d 108, 112 (5th Cir. 1982). Parisi supplied information in her disability application about the duties of her past relevant work as a computer programmer, (Tr. 72-79), and she has not demonstrated that the ALJ's determination that she can perform her previous work either as she performed it or as it is generally performed in the national economy is unsupported by substantial evidence.

---

[2] Parisi's counsel asked the vocational expert about the vocational impact if a claimant required frequent rest periods or naps during the day, but otherwise asked no follow-up questions related to Parisi's past relevant work. (Tr. 334).

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 12, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 12, 2008, to serve and file written objections to the United States Magistrate Judge's proposed

findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED OCTOBER 22, 2008.

   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE